IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEPRINO FOODS COMPANY               :
                    Plaintiff        :
        v.                           :        3:CV-02-1073
                                     :        (CHIEF JUDGE VANASKIE)
GRESS POULTRY, INC. Individually and :
t/b/a Gress Refrigerated Services,   :
GLENN GRESS, Individually and t/b/a  :
Gress refrigerated Services, KEITH   :
GRESS, Individually and t/b/a Gress  :
Refrigerated Services, JAMES GRESS,  :
SR., Individually and t/b/a Gress    :
Refrigerated Services, JAMES GRESS,  :
JR., Individually and t/b/a Gress    :
Refrigerated Services, and GRESS     :
REFRIGERATED SERVICES               :
                    Defendants       :

## MEMORANDUM

Leprino Foods Company, Inc. ("Leprino") brought this litigation in this Court on the

basis of diversity of citizenship jurisdiction under 28 U.S.C. § 1332 to recover the value of

more than 8 million pounds of its mozzarella cheese allegedly damaged when stored in a

refrigerated warehouse.  Named as Defendants are Gress Refrigerated Services, the

purported operator of the warehouse in question, along with Gress Poultry, Inc., Glenn

Gress, Keith Gress, James Gress, Sr., and James Gress, Jr., all of whom are sued

individually and "t/b/a Gress Refrigerated Services."  The individual Gress Defendants have

moved for summary judgment on the ground that the refrigerated warehouse is operated by

a corporate entity, Gress Frozen Foods, Inc., which does business under the names of

"Gress Public Refrigerated Services" and "Gress Refrigerated Services."  Because it is undisputed that (a) Leprino entered into the bailment arrangement for its cheese with "Gress Public Refrigerated Services," the registered fictitious name for Gress Frozen Foods, Inc.; (b) during the time period in question, Gress Frozen Foods, Inc. used the names "Gress Public Refrigerated Services" and "Gress Refrigerated Services" interchangeably; (c) the individual Defendants did not enter into a partnership agreement, formal or informal; and (d) Leprino did not rely upon the existence of a partnership or the prospect of individual liability of members of the Gress family in storing its cheese in the Gress refrigerated warehouse, Leprino's assertion of individual liability of members of the Gress family on the theory that the warehouse was operated as a partnership is without merit.  Furthermore, individual liability may not be premised upon the fact that correspondence to Leprino failed to specify that the names "Gress Public Refrigerated Services" and "Gress Refrigerated Services" were used as the fictitious names for Gress Frozen Foods, Inc.  Accordingly, the individual Gress Defendants' Summary Judgment motion will be granted.

## I. BACKGROUND

Plaintiff Leprino Foods Company is a Colorado corporation with its principal place of business located in Denver, Colorado.  (Individual ("Ind.") Defs.' Statement of Material Facts ("SMF") ¶ 1, Dkt. Entry 60.)[1]  Defendant Gress Poultry Inc. is a Pennsylvania corporation

---

[1]Citation to a paragraph of the Individual Defendant's Statement of Material Facts

with its principal place of business located in Scranton, Pennsylvania.  (Id., ¶ 2.)  Gress

Poultry was incorporated in 1976.  (Ex. 23 at 5, Dkt. Entry 61.)

Gress Frozen Foods, Inc. was incorporated under the laws of Pennsylvania on

October 17, 1980.  (Ind. Defs' SMF ¶ 13, Dkt. Entry 60.)  The shareholders of Gress Frozen

Foods, Inc. include: Edward James Gress, Rose Gress, James M. Gress, Gary Gress,

Glenn Gress, Jeffrey Gress, and Keith Gress.  (Id. ¶ 3.)  Edward James Gress is the

President of Gress Frozen Foods, Inc.  (Id. ¶ 8.)   He was named incorrectly in the complaint

as James Gress, Sr.  (Id.)  Glenn Gress serves as the Vice President and Corporate

Secretary of Gress Frozen Foods, Inc.  (Id. ¶ 4.)  James M. Gress is the Treasurer of Gress

Frozen Foods, Inc.  (Id. ¶ 10.)  He was named incorrectly in the complaint as James Gress,

Jr.  (Id.)

On December 2, 1985, Gress Frozen Foods, Inc. registered the name of Gress

Public Refrigerated Services as its fictitious name.  (Id. ¶ 14.)  The business purpose of

Gress Public Refrigerated Services was the storage and shipment of perishable goods.  (Id.)

Edward James Gress is listed as the President on the fictitious name filing.  (Id. ¶ 15.)

In early 1992, Leprino's Director of Product Management, Bob Ekstrom, engaged in

business discussions with Glenn Gress about storing Leprino's cheese at the Gress

warehouse.  (Ekstrom Aff. ¶ 2, Ex. B, Dkt. Entry 72.)  By letter dated January 15, 1992,

---

signifies that Leprino has admitted that particular factual assertion.

Glenn Gress wrote to Mr. Ekstrom on Gress Public Refrigerated Services letterhead.  (Defs'
Ex. 21, Dkt. Entry 61.)  The letter stated that "Gress Public Refrigerated Services is a family
owned and operated cold storage operation in Scranton, Pa."  (Id.)  The letter was signed
"Glenn Gress, Gress Public Ref. Services."  (Id.)

On February 4, 1992, Mr. Charles wrote to Mr. Gates and Don Kleck to quote
handling and storage rates.  (Defs' Ex. 19, Dkt. Entry 61.)  The quote was sent on "Gress
Public Refrigerated Services" letterhead and was signed  "James Richard Charles."  (Id.)
On February 11, 1992, Mr. Ekstrom sent a letter to Mr. Charles summarizing the relevant
terms of the business relationship between Leprino and Gress Public Refrigerated Services.
(Defs' Ex. 20, Dkt. Entry 61.)  The letter was addressed to Mr. Charles at "GRESS PUBLIC
REFRIGERATED SERVICES."  (Id.)

After Mr. Ekstrom sent the letter to Mr. Charles on February 11, 1992, Leprino began
storing cheese at the Gress warehouse.  (Ekstrom Aff. ¶ 7, Ex. B, Dkt. Entry 72.)   The
February 11, 1992 correspondence which Leprino claims established the essential terms for
the bailment of its mozzarella was addressed to the registered fictitious name for Gress
Frozen Foods, Inc.  From time to time thereafter, Gress and Leprino modified the terms of
their agreement set forth in the February 11, 1992 letter by changing the storage rates,
handling rates, and the people authorized to release product.  (Id.)  There is no evidence
that Leprino was ever informed that the business structure under which the warehouse was

operated was changed from a corporate form to a partnership consisting of members of the Gress family.

Beginning in the mid-1990s, Gress Frozen Foods, Inc. sometimes referred to itself as Gress Public Refrigerated Services or Gress Refrigerated Services.  The two names began to be used interchangeably.  (Glenn Gress Aff. ¶ 20, Ex. 2, Dkt. Entry 61.)  Leprino referred to the warehouse business as Gress Refrigerated Services.  For example, a Leprino Foods Invoice dated March 4, 1999, for alleged damage to inventory was addressed to "GRESS REFRIGERATED SERVICES."  (Defs' Ex. 22, Dkt. Entry 61.)  Significantly, the invoice was paid by a check issued on the account of Gress Frozen Foods, Inc.  The check that accompanies the invoice is drawn on the account of Gress Frozen Foods, Inc.  (Id.)  On April 5, 1999, Keith Gress wrote a letter to Mike Homiak of Leprino Foods regarding the Leprino account. The letter contained a Gress Refrigerated Services letterhead.  (Ind. Defs' SMF, ¶ 26.)   A warehouse receipt to Leprino dated July 31, 2001 lists Gress Refrigerated Services as the authorized signatory.  (Id. ¶ 23.)  A "Lot Receipts Recap Report" from January 1, 1997 to July 30, 2003, however, was issued by Gress Public Refrigerated Services.  (Id. ¶ 24.)  The customer inventory report as of February 27, 2001 was also issued under the name of Gress Public Refrigerated Services.  (Id. ¶ 25.)  It is also noteworthy that correspondence during the business relationship does not indicate that the individual defendants were doing business as Gress Refrigerated Services.  (Id. ¶¶ 23-26, 29.)

5

In April, 2001, the Pennsylvania Department of Transportation performed an audit on the trucking business of Gress Poultry, Inc. (Id. ¶ 39.)  The Department of Transportation requested that a "dual locator" be filed in public records to identify what entity may be associated with Gress Refrigerated Services. (Id.)  On May 1, 2001, Len Mickavitz, a transportation consultant, filed a fictitious name application with the Commonwealth of Pennsylvania listing Gress Refrigerated Services as a fictitious name. (Id.)  According to the fictitious name filing, the business purpose of Gress Refrigerated Services was a "Broker of Property and Transportation of same in Interstate and Intrastate Commerce." (Id. ¶ 40.) The fictitious name filing contained a line asking for "[t]he name and address, including number and street, if any, of each individual interested in the business." (Ex. 6, Dkt. Entry 61.)  The filing then listed Glenn Gress, James Gress, Sr., James Gress, Jr., and Keith Gress. (Id.)  This document erroneously named Edward James Gress as James Gress, Sr. and James M. Gress as James Gress, Jr.  The filing then asked for "[e]ach entity, other than an individual, interested in such business."  The filing listed Gress Poultry Inc. (Id.)

It appears that Leprino has relied upon this fictitious name registration, made more than nine years after the parties' relationship was formed and shortly before the damaged cheese was discovered, to name the individual Gress family members as Defendants.  In moving for summary judgment, the Gress Defendants have asserted that the refrigerated warehouse business was conducted at all relevant times by a corporate entity, Gress

6

Frozen Foods, Inc., for which it did business under the names Gress Public Refrigerated

Services and Gress Refrigerated Services.  The question before the court is whether

Leprino has presented sufficient evidence that the warehouse business was actually

operated as a partnership consisting of the individual Gress family members, doing business

as Gress Refrigerated Services, to warrant a jury trial on the matter of individual liability.

## II. DISCUSSION

Summary judgment should be granted when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and . . . the moving party is entitled to a judgment

as a matter of law." FED. R. CIV. P. 56(c).  A fact is "material" if proof of its existence or non-

existence might affect the outcome of the suit under applicable law.  See Anderson v.

Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Facts that could alter the outcome are

material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir.), cert. denied,

513 U.S. 1022 (1994).  "[S]ummary judgment will not lie if the dispute about a material fact is

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 ( 1986).  All doubts as to the

existence of a genuine issue of material fact must be resolved against the moving party, and

7

the entire record must be examined in the light most favorable to the nonmoving party.  See

Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  Once the moving party has

satisfied its burden, the nonmoving party, "must present affirmative evidence in order to

defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.

Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand

a motion for summary judgment once the moving party has presented evidentiary materials.

See Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56

requires the entry of summary judgment if there was adequate time for discovery and a

party "fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477

U.S. at 322.

     Leprino argues that there is sufficient evidence that the warehouse business was

operated as a partnership to defeat summary judgment.  As noted above, the principal

evidence upon which Leprino relies is the use of the name Gress Refrigerated Services for

the warehouse business and the 2001 fictitious name registration for Gress Refrigerated

Services that identified members of the Gress family as individuals "interested in the

business" of Gress Refrigerated Services.  (Oral Argument Transcript, 10-11.)  In the

alternative, Leprino argues that the individual Defendants should be estopped from denying

that the warehouse business was operated under the name of Gress Refrigerated Services

8

as a partnership.  (Id. at 13.)  Finally, in sur-reply brief, Leprino asserted for the first time that

the individual Defendants should be held personally liable because they failed to disclose

their corporate status when they were conducting business with Leprino.  (Pls' Sur-reply Br.

at 2-3, Dkt. Entry 80.)  I will address each argument separately below.

### A.  Individual Liability Premised upon the Existence of a Partnership

"A partnership is an association of two or more persons to carry on as co-owners a

business for profit."  15 PA. CONS. STAT. ANN. § 8311(a).  To determine if a partnership

exists, there must be "clear, mutual assent on the part of two or more persons" to form a

partnership.  In Re Jackson, 28 B.R. 559, 562-63 (Bankr. E.D. Pa. 1983); accord Zubak v.

Bakmaz, 29 A.2d 473, 474 (Pa. 1943).  There is no requirement that the partnership

agreement be in writing.  See Ruth v. Crane, 392 F. Supp. 724, 733 (E.D. Pa. 1975).  The

partnership agreement may be made orally, or it may be found to exist from all of the

attending circumstances.  See Barbet v. Ostovar, 417 A.2d 636, 641 (Pa. Super Ct. 1979).

An established pattern of profit and loss sharing may support a finding of a partnership.  See

Canfield v. Canfield, 4 Pa. D. & C.3d 110, 113 (Pa. Com. Pl. 1977); 15 PA. CONS. STAT. ANN.

§ 8312(4).  An intent to form a  partnership may also be found through a partnership tax

return.  See Canfield, 4 Pa. D.&C. 3d at 113; Tocco v. Tocco, 567 A.2d 303, 307 (Pa. Super.

Ct.1989).

Leprino has offered no evidence that the Gress family members intended to operate

the refrigerated warehouse business as a partnership.  Nor is there any evidence of profit

and loss sharing from which an intent to form a partnership be inferred.  Leprino has not

presented tax returns of a partnership, and at oral argument conceded that no such returns

existed.  (Oral Argument Tr. at 11.)

Leprino contends that the use of the name, "Gress Refrigerated Services," coupled

with its 2001 fictitious name registration, is sufficient to defeat summary judgment.  I

disagree.

The Fictitious Name Act provides that "any entity which either alone or in

combination with any other entity conducts any business in this Commonwealth under or

through any fictitious name shall register the fictitious name under this chapter and shall

amend such registration whenever necessary to maintain the accuracy of the information

disclosed thereby."   54 PA. CONS. STAT. ANN. § 303(b).  An entity that has failed to register a

fictitious name will not be permitted to maintain any action in Pennsylvania until such entity

has complied with the Act. See id. § 331(a).  The failure of any entity to register a fictitious

name will not impair the validity of any contract or act of such entity and will not prevent

such entity from defending any action in Pennsylvania.  See id.  The purpose of the

Fictitious Name Act is to protect persons giving credit in reliance on the assumed or fictitious

name and to definitely establish the identity of the individuals owning the business.  See

Fremd v. Horne, 10 Pa. D. & C. 4th 321, 323 (Pa. Com. Pl. 1990).  Filing a certificate to

transact business under an assumed name does not, by itself, manifest an intent to form a partnership.  See Wilder v. Hobson, 398 S.E.2d  625, 628 (N.C. App. 1990) (granting summary judgment because the filing of a certificate to transact business under an assumed name was insufficient to create a genuine issue of material fact that the parties intended to form a partnership).

It is undisputed that Gress Public Refrigerated Services was registered as a fictitious name for Gress Frozen Foods, Inc. on December 2, 1985.  The individual Gress Defendants were not listed as "individuals interested in the business" on that fictitious name registration.  Leprino maintains that it entered into a contractual relationship with Gress Public Refrigerated Services in February of 1992.  Thus, Leprino necessarily acknowledges that it contracted with a corporate entity for the storage of its product.

At oral argument, Leprino's counsel suggested that the individual Defendants elected to change the structure of the warehouse business some time after 1992.  (Oral Argument Transcript at 67.)  Significantly, however, Leprino has offered no evidence to cast doubt on Glenn Gress's sworn assertion that the names, "Gress Refrigerated Services" and "Gress Public Refrigerated Services," were used interchangeably by Gress Frozen Foods, Inc. during the relevant time frame.  Nor has Leprino countered the showing that a transportation consultant caused a fictitious name registration for Gress Refrigerated Services in May of 2001 in connection with the Gress family's transportation business, not its warehouse

11

business.  Under these circumstances, no reasonable juror could conclude that the

warehouse business was operated by the individual Defendants as a partnership.  Stated

otherwise, the use of the name "Gress Refrigerated Services" along with the 2001 fictitious

name registration are insufficient to support a rational inference that the individual

Defendants mutually assented to conduct the warehouse business under the form of a

partnership.

### B.  Partnership by Estoppel

Leprino alternatively argues that the individual Defendants should be held liable

under a partnership by estoppel theory.  Under Pennsylvania law, the elements of

partnership by estoppel are "(1) a representation to a third party that one is a partner; (2)

reliance upon that representation by the third party to whom it was made; and (3) the

extension of credit by such party on reliance upon the representation."  Import Products Co.,

Inc. v. Group RL Inc., Civ. A. No.95-52216, 1998 WL 1093454, *4 (Pa. Com. Pl. Dec. 30,

1998).[2]  "Estoppel is based upon the principle that if a man holds himself out, either actively

─────────────────────

[2] Section 8328 of the Pennsylvania Uniform Partnership Act provides:

Partner by Estoppel

(1) When a person, by words spoken or written or by conduct,
represents himself, or consents to another representing him to
any one, as a partner in an existing partnership or with one or
more persons not actual partners, he is liable to the person to
whom the representation has been made who has, on the faith

or passively, or permits himself to be held out as a member of a partnership, and so induces

third parties to deal with the firm and extend credit upon the belief that the party estopped

was a member thereof, and upon credit of this party, when otherwise they would not have so

dealt, he should not then be allowed to deny his apparent connection with the partnership,

and so escape liability. . . . [T]he parties are liable to one induced thereby to give credit, the

ground of such liability not being under direct representations between the parties, but upon

the principles of general policy to prevent fraud." Lazarus v. Goodman, 195 A.2d 90, 92

(Pa. 1963).

        In the present case, the record shows that  Leprino's first contact with the Gress

warehouse occurred in the late 1980's after Mr. Charles met with Mr. Gates at the Leprino

office to advise Mr. Gates that Gress had a storage facility available in Scranton.  By letter

dated January 11, 1988, Mr. Charles sent a follow up letter discussing the warehouse's

storage rates.  The letter was sent on "Gress Public Refrigerated Services" letterhead and

---

> of the representation, given credit to the actual or apparent
> partnership, and if he has made the representation or
> consented to its being made in a public manner he is liable to
> that person, whether the representation has or has not been
> made or communicated to the person so giving credit by or with
> the knowledge of the apparent partner making the
> representation or consenting to its being made.
>
> (2) When a partnership liability results, he is liable as though he
> were an actual member of the partnership.

15 Pa. Cons. Stat. Ann. § 8328(a).

was signed "Rich Charles, Sales."  Mr. Charles also enclosed some pamphlets and a tariff discussing storage rates, inspection, extermination, security, and insurance.  The front of the actual tariff stated, "Gress Public Refrigerated Services."  Underneath the name it states, "Division of Gress Frozen Foods."

 In early January, 1992, Mr. Ekstrom and Glenn Gress engaged in business discussions about storing Leprino's cheese.  By letter dated January 15, 1992, Glenn Gress followed up on their business discussions and informed Mr. Ekstrom that "Gress Public Refrigerated Services is a family owned and operated cold storage operation in Scranton, Pa."  The letter expressed an interest in doing business with Leprino and discussed the size of its freezer, its rates, and transportation services.  The letter was placed on Gress Public Refrigerated Services letterhead and was signed "Glenn Gress, Gress Public Refrigerated Services."

On February 4, 1992, Mr. Charles sent a letter to Don Kleck and Mr. Gates quoting handling and storage rates.  The letter was sent on Gress Public Refrigerated Services letterhead.  On February 11, 1992, Mr. Ekstrom sent a letter to Mr. Charles summarizing the relevant terms of their business relationship.

Beginning in the mid-1990s, Gress Public Refrigerated Services was sometimes referred to as Gress Refrigerated Services.  The two names began to be used interchangeably.  For example, a Leprino Foods Invoice dated March 4, 1999, for inventory

14

damage was addressed to Gress Refrigerated Services.  The invoice, however, was paid by

a check drawn on the account of Gress Frozen Foods, Inc.  On April 5, 1999, Keith Gress

wrote a letter to Mike Homiak of Leprino Foods regarding the Leprino account on Gress

Refrigerated Services letterhead.  Furthermore, a July 31, 2001 warehouse receipt to

Leprino Foods lists Gress Refrigerated Services as the authorized signatory.  A "Lot

Receipts Recap Report" from January 1, 1997 to July 30, 2003, however, was printed under

the name of Gress Public Refrigerated Services.  A Customer Inventory Report as of

February 27, 2001 was also issued by Gress Public Refrigerated Services.  Leprino agrees

that letters and warehouse receipts containing the name "Gress Refrigerated Services" do

not indicate that the named individual Defendants were doing business as Gress

Refrigerated Services.

　　　　Significantly, the record is devoid of evidence that Leprino relied upon

representations that the individual Defendants were partners of Gress Refrigerated Services

before it entered into a storage agreement with Gress Public Refrigerated Services in 1992.

Leprino has also failed to show that the change in letterhead in the mid-1990's caused it to

view Gress Refrigerated Services as a separate business entity that was a partnership.

There is no evidence that Leprino thought it was suddenly doing business with a partnership

and that it continued with its storage arrangement based on such belief.  Finally, while

Leprino argues that the 2001 fictitious name filing is evidence of a partnership, Leprino has

failed to show how it relied upon this filing in deciding whether to continue storing cheese at the Gress warehouse.  Absent evidence of reliance upon representations of the existence of a family partnership, Leprino is not entitled to a trial on its partnership by estoppel claim. See In Re Ganaposki, 27 F. Supp. 41, 42 (M.D. Pa. 1939) ("the doctrine of estoppel is not sufficient to create a partnership as between the alleged partners, or as to third persons who have not in fact been misled").

### C.  Failure to Disclose One's Corporate Status

Leprino finally argues that the individual Gress Defendants should be held personally liable for the damaged cheese because the correspondence from Gress Refrigerated Services and Gress Public Refrigerated Services failed to disclose that they were acting on behalf of a corporate entity.  In support of its argument, Leprino cites to System Industries, Inc. v. Han, Civ. A. No. 84-5457, 1986 WL 6139, at *6 (E.D. Pa. May 23, 1986 ), vacated on other grounds, 1986 WL 10551 (E.D. Pa. Sept. 15, 1986), which addresses whether an agent may avoid personal liability in a breach of contract case where the agent executes the contract without disclosing the identity of the agent's principal.  Under Pennsylvania law, an agent who enters into a contract without disclosing that he is acting for a principal is personally liable on the contract.  See Dwyer v. Rothman, 431 A.2d 1035, 1039 (Pa. Super. Ct. 1981) (citing Revere Press, Inc. v. Blumberg, 431 Pa. 370, 246 A.2d 407 (1968)).  "A third party who deals with an agent of an undisclosed principal may upon discovery of the

principal's identity proceed against either the agent or [the] principal." <u>Sharon Gen. Hosp. v.</u> <u>McLaughlin</u>, No. 1314 CD 1988, 1989 WL 225393, at *4 (Pa. Com. Pl. June 27, 1989).

In the present case, Leprino is suing for negligence, not breach of contract. Thus, the undisclosed principal doctrine does not apply. <u>See</u> <u>Ayers v. Quillen</u>, Civ. A. No. 03C-02-004-RFS, 2004 WL 1965866, at *2 (Del. Super. June 30, 2004) (finding that the undisclosed principal doctrine does not apply when plaintiffs are suing for negligence, gross negligence, and negligent bailment). Accordingly, summary judgment will be granted as to the individual Defendants.[3]

---

[3]It should be noted that Leprino has not argued that the corporate veil should be pierced in order to impose liability on the individual Defendants. Nor did it argue that the individual officers should be liable under the "participation theory" of tort liability. Under the participation theory, "an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but . . . an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless [the officer] specifically directed the particular act to be done or participated, or cooperated therein." <u>Mill Run Associates v. Locke Property Co.,</u> <u>Inc.,</u> 282 F. Supp. 2d 278, 287 (E.D. Pa. 2003) (citing <u>Wicks v. Milzoco Builders, Inc.,</u> 503 Pa. 614, 470 A.2d 86, 90 (1983)). Because the record does not specifically show how any individual Defendant contributed to the damaged cheese, there is no basis for applying the participation theory of individual liability.

## III. CONCLUSION

For the reasons set forth above, the individual Gress Defendants are entitled to summary judgment.  An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEPRINO FOODS COMPANY                    :
                Plaintiff        :
   v.                                    :        3:CV-02-1073
                              :        (CHIEF JUDGE VANASKIE)
GRESS POULTRY, INC. Individually and     :
t/b/a Gress Refrigerated Services,       :
GLENN GRESS, Individually and t/b/a      :
Gress refrigerated Services, KEITH       :
GRESS, Individually and t/b/a Gress      :
Refrigerated Services, JAMES GRESS,      :
SR., Individually and t/b/a Gress        :
Refrigerated Services, JAMES GRESS,      :
JR., Individually and t/b/a Gress        :
Refrigerated Services, and GRESS         :
REFRIGERATED SERVICES                    :
               Defendants       :

## ORDER

NOW, THIS 25th DAY OF JULY, 2005, for the reasons set forth in the foregoing

memorandum, IT IS HEREBY ORDERED THAT:

    1.  The individual Defendants' motion for summary judgment (Dkt. Entry 59) is

GRANTED.

    2.  The Clerk of Court is directed to enter judgment in favor of Defendants Glenn

Gress, Keith Gress, Edward James Gress (mis-named as James Gress, Sr.) and James M.

Gress (mis-named as James Gress, Jr.).

                                     s/ Thomas I. Vanaskie
                                     Thomas I. Vanaskie, Chief Judge
                                     Middle District of Pennsylvania